[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint dated April 11, 2002 and returnable April 30, 2002, in which complaint the plaintiff, Carol Preston, by way of prayer for relief, requested custody for the three minor children pendente lite, child support for the three minor children pendente lite, alimony pendente lite, conveyance of the family home and a fair and just property settlement. Accompanying the complaint was a motion for support pendente lite, custody pendente lite, alimony pendente lite and exclusive possession of the family home.
There was an order attached to the motion. The papers served on the defendant, Ward Preston, included the usual automatic orders. The marshal's return accompanied the papers returned to court.
On May 16, 2002, counsel appeared for the defendant and on May 20, 2002, a certain stipulation was entered into by and between the parties whereby the defendant would pay child support to the plaintiff in the amount of $470.00 per week effective May 27, 2002. The order went on to state while the defendant is receiving unemployment benefits, he shall pay child support at the rate of $175.00 per week. The shortfall on the child support order shall accumulate as an arrearage. Upon resuming regular employment, he shall pay the accumulated arrearage at the rate of $94.00 per week in addition to the amount ordered above. This order was by the court, Robaina, J.
The parties on May 20, 2002 submitted an agreement whereby the parties were to share joint legal custody of the three minor children and granting the defendant husband reasonable rights of visitation. The plaintiff, at the time of the entry of the aforementioned order, filed a financial affidavit with the court indicating the nature of her employment as a bank cashier at Foxwoods Resort and Casino. In addition, a supplement to the financial affidavit was attached thereto setting CT Page 3608 forth the plaintiff's assets. The defendant, at the time of the aforementioned order, filed a financial affidavit indicating that he was at that time an unemployed operator associated with the International Union of Operating Engineers.
On June 6, 2002, the defendant filed a motion to reargue the support order as well as a motion for extension of time to file an appeal incident thereto.
On June 10, 2002, the defendant filed a motion claiming that the plaintiff was in contempt of certain automatic orders. It does not appear that that motion was acted upon.
On June 18, 2002, the defendant filed an appeal to the appellate court as concerns the child support formerly entered by the court, Robaina, J.
On July 25, 2002, the defendant filed a request for reconciliation. This motion was granted.
On August 21, 2002, new counsel appeared for the defendant and the appeal that had been filed with the appellate court as concerns the order of support was withdrawn.
On October 1, 2002, the plaintiff filed an application for relief from abuse with statement of conditions attached thereto. This subsequently resulted in a restraining order being entered by the court, Devine, J., on October 15, 2002.
On October 23, 2002, the defendant filed a motion to reopen and modify child support pendente lite with current financial affidavit of the defendant attached thereto.
On December 11, 2002, the plaintiff filed a motion for contempt. It does not appear that this motion was acted upon.
On February 28, 2003, the plaintiff and the defendant with their respective counsel appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact.
The plaintiff and the defendant were joined in marriage on May 31, 1986 in the town of Ledyard. The complaint indicated that the marriage was performed in the town of Preston but counsel made an oral motion to the court to correct the location which the court CT Page 3609 granted.
The plaintiff's maiden name was Lane. Both of the parties have resided in the state of Connecticut for more than one year prior to the initiation of the pending petition.
The marriage between the plaintiff and the defendant has irretrievably broken down with no reasonable prospect for reconciliation.
The plaintiff and the defendant have three minor children issue of this union. The child Nicole born April 13, 1988; Michelle, born April 16, 1991; and Kyle born May 25, 1993. No other children have been born to the plaintiff petitioner from the time of the marriage to the present time except those noted herein.
The parties have not been the recipient of welfare from the State of Connecticut or any town, city or municipality or subdivision thereof.
The plaintiff testified that one of the reasons for the breakdown of the marriage was the immoderate or excessive use of alcohol by the defendant. In addition, the plaintiff testified that she was verbally abused by the defendant and that there was at least one instance of physical abuse. The plaintiff's testimony indicated that she had sought several restraining orders against the defendant predicated upon her representations as to physical abuse.
The plaintiff has been employed at the Foxwoods Casino for 10-1/2 years. Her position is entitled "bank cashier." Plaintiff testified that her health was, in her words, fine; that her work at the casino involved the satellite bank there where non-gaming activities or funds were handled. The plaintiff has a 401K incident to her work at the casino.
The defendant, according to the plaintiff, is a heavy equipment operator usually working under direction of his union; that the defendant would work most all of the year except for two months in the winter and some time off at Christmas. The plaintiff acknowledged that the defendant was a steady worker.
The plaintiff testified as concerns the home of the parties and the manner in which it was acquired, which in part resulted from the sale of an earlier home that the parties had resided in.
In addition, the plaintiff claims that a portion of the equity in the present home was made possible by virtue of funds that she received from the estate of her late parent father. The plaintiff indicated that she CT Page 3610 has at the present time assets amounting to approximately $35,000.00. This as a result of recent declines in the stock market.
The plaintiff's testimony was to the effect that she put as much as $7,000.00 from assets from her late father into the home at the time that it was purchased.
It was apparently the hope of the plaintiff's late father that funds which had been given or willed to her should be used for the benefit of the children's education. There is no indication of any separate educational funds set aside specifically for that purpose.
According to the plaintiff, while unemployed the defendant has received unemployment compensation of anywhere between $125.00 and $175.00 a week.
The plaintiff, incident to her testimony, requests that she have the entire equity of the family home and sole custody of the children.
The plaintiff's testimony was to the effect that the defendant concerns himself pretty much solely to the middle child Michelle and that he has not seen the children at all as concerns this last Christmas and that the children felt saddened by virtue of the defendant's failure to participate in the Christmas holidays. The testimony did indicate that the defendant left presents in the driveway of the home but did not enter the same. The presents being for the children.
The plaintiff's lament is that the defendant has not participated in activities with the children in a variety of matters including sports; that the plaintiff represented that she had no problem with the court granting reasonable rights of visitation to the defendant. The plaintiff's testimony was to the effect that she claimed by virtue of the order of Robaina, J., that there was an arrearage presently due to her in the amount of $14,000.00. Apparently on occasion, the plaintiff would receive remittances from the defendant of $350.00.
One of the plaintiff's requests is that the defendant remove his personal property from the home and a certain motor vehicle.
The plaintiff indicated that she was willing to assume and be responsible for the existing mortgage on the home in the event that she should receive the entire equity therein.
According to the plaintiff, the defendant has been out of work for about a year but represents that to the best of her knowledge CT Page 3611 and belief there are positions available which the defendant has not taken advantage of.
The plaintiff is desirous of keeping the assets which are presently shown on her financial affidavit. The plaintiff is also desirous of having the court enter an order whereby post-high school education matters can be considered at a later date with regard to the children pursuant to the provisions of Public Act 02-128. The plaintiff's request is also to the effect that the defendant should provide medical insurance coverage for the three children.
The plaintiff, according to the testimony, has a 401K at Foxwoods Casino wherein the principal thereof is in the approximate amount of $20,000.00. Again, as noted, it is the plaintiff's claim that a substantial portion of the assets that she has came from her late father who passed away in May of 1993.
The plaintiff acknowledged that on occasion she receives "tips" amounting to sometimes as much as $10.00 a day from other employees, not from direct participation with customers at the casino. On occasion, the plaintiff is able to have some overtime work at the casino, wherein in addition to her regular compensation, she gets time and a half. The plaintiff's hourly rate is $12.76.
The plaintiff graduated from high school and subsequently attended hairdressing school. The plaintiff has been gainfully employed during the entire marriage except for the time when the children were born.
At the time that the parties were first joined in marriage, the defendant was renting the residence where they lived and at one time, the plaintiff and the defendant resided with the plaintiff's parents for 1-1/2 years. Subsequently, they bought a home. The first home that the parties had was, according to the testimony, purchased for $110,000.00. In March of 1996 the former home in Griswold was sold and the Ledyard home was purchased. The purchase price for the Ledyard property was $163,000.00. The deposit put down at the time was $17,000.00. The plaintiff acknowledged that the defendant did painting at the home, put in a new furnace, that the present home has four bedrooms.
The plaintiff, for a substantial period of her employment at Foxwoods, worked on the second shift. The plaintiff indicated that the defendant was age 45; again, affirmed her observations or feelings that the defendant had a drinking problem and that the same had physically affected him in terms of problems with his liver. CT Page 3612
The plaintiff indicated that the health insurance coverage which is in place incident to her employment is excellent coverage and that she plans to keep the children on that medical regimen.
At one time the plaintiff's mother stayed with the parties during a period of her illness.
The home was described as a contemporary colonial with a garage on a cul de sac. No formal appraisal was submitted as an exhibit nor was there any testimony from a qualified realtor.
The plaintiff's age is 40. Again, the defendant is age 45. The plaintiff again characterized her health as excellent. She acknowledged having graduated from high school and subsequently spent 13 months at a hairdressing school. The child Nicole is now age 14, represented to be in good health in the ninth grade. The child Michelle is age 11, represented to be in good health in the sixth grade. The child Kyle is age 9, represented to be in good health in the fourth grade and doing well academically in school.
The duration of the marriage to the present time would appear to be approximately 17 years.
The plaintiff sought counseling two years ago and still sees a counselor with the children. The problem expressed to the counselor, according to the plaintiff, was the plaintiff's concern as to the defendant's immoderate use of alcohol.
The plaintiff represented that pursuant to the order of Robaina, J., that she has been receiving $175.00 weekly and has indicated she represented the accumulating arrearage amounted now to about $14,000.00 based on that earlier order.
The plaintiff acknowledged two debts shown on her financial affidavit, VISA, $4,762.00 and Mastercard, $3,000.00 as hers.
According to the testimony, the title to the property at 8 Oak Hills Trail Road in Ledyard stands in both names. The plaintiff, in her testimony, valued the property at $185,000.00. The 1997 Volvo is in the name of the defendant, the 1996 Ford Windstar is in the name of both parties.
On the Ford Windstar, there are apparently six more payments required amounting to $350.00 a month. CT Page 3613
The plaintiff's request is for the 1997 Volvo and that she would be responsible for the remaining payments thereon, which are to the amount of $364.00 a month.
It was the plaintiff's claim that the defendant would address her in speech laced with profanities.
The plaintiff's request to the court in her testimony was to the effect that she wanted sole custody of the three children; that she wanted child support, alimony, the entire equity in the home and the retention of her present assets.
On further inquiry and testimony, the plaintiff acknowledged and agreed that the actual arrearage due to her from the defendant was to the amount of $11,975.00.
The plaintiff requested $1.00 a year alimony in order to keep the matter open for possible reconsideration and was desirous of taking the children as exemptions for income tax purposes.
In his testimony, the defendant verified the particulars as concerns the date and place of the marriage, the names, dates of birth of the children and matters of like nature.
The defendant represents that he has some health problems including problems with his blood count and has hepatitis C.
The defendant represented that he has an infection of the liver and that this affects his immune system. The defendant is on a regimen of medication and takes Ribatol and requires injections, which he apparently receives at the Foxwoods place of employment of the plaintiff.
The defendant must continue in this current medical regimen for one year. His next evaluation with regard to his medical condition will be undertaken in March or April of 2003. The defendant's testimony was to the effect that there was no more than a 50-50 chance of marked improvement in his medical conditions. The defendant's testimony was to the effect that the injections which he is required to take make him, in his words, deathly ill. In addition, he represented that he has two bad knees. This constituting what he characterized as an ACL problem involving ligaments under the kneecap. The defendant has scarring on both knees. In cold, damp weather the defendant suffers as a result thereof. The defendant has been doing construction work for 14 years.
The defendant is a member of International Engineers Local #478 in the CT Page 3614 union. He operates heavy equipment, bulldozers, cranes, excavators and other large machines including cranes on tracks. The defendant receives compensation when he is working at different rates depending on the type of equipment that he operates.
During the period August 2000 to 2002, the defendant worked for a firm known as MYR Power, an electrical contractor. The job came to an end in 2002. The crane, which he was operating, was no longer needed and the defendant was let go.
In the year 2001, the defendant was working 50 to 60 hours a week. The court will refer to Defendant's Exhibit 2 in that respect.
Certain tax returns were filed with the court as exhibits, which the court will touch on in due course.
After being released from the MYR job, which ended in 2002, the defendant subsequently was assigned to a bridge job in Wallingford. According to his testimony, in 2002 the defendant earned $18,000.00 on the Wallingford job plus an $1,800.00 on a crane fill-in job at Fort Trumbull, Connecticut.
The defendant is still collecting $451.00 weekly unemployment benefits on an extension period incident to those benefits.
The defendant worked for a company incident to the building of a golf course for two weeks non-union in North Stonington. As a result of that, because of union problems, he had to leave that job and was reprimanded by the union and he lost some benefits incident thereto.
The defendant calls the union shop weekly trying to seek work. The defendant does not have an overly great amount of seniority with the union, which would have better protected him.
The defendant hopes for a job in Taunton, Massachusetts. He needs a hydraulic machine operator's license incident thereto in order to be considered for that work and hopes to secure the same very shortly so that he can return to the Massachusetts job running a large excavator.
The defendant took issue with the plaintiff as to problems of his immoderate use of alcohol. The defendant indicating that his drinking was not immoderate and was due to the stressful nature of his work. He characterized his drinking as merely a few beers, indicated that even mindful of his employment, he, on fairly regular occasions, looked after the children and made meals. CT Page 3615
The defendant represents that the plaintiff's posture is one of being resentful for not being able to party with her friends.
Prior to the parties being married, they had, for a brief period of time, resided together.
At one point, the defendant took a second job with Harry's Taxi Service to get additional money for a down payment on the home. It was the defendant's position that approximately $8,000.00 was put down on the home attributable to him. In addition, the defendant apparently received some funds from accident settlements.
The defendant's testimony was to the effect that the present home when purchased cost $160,000.00. That purchase was in 1996.
The defendant represented that he has done painting work in the home, remodeled bedrooms, done wallpapering, put in a new furnace, new stove, water filtration system and new French doors.
The defendant made certain representations to the court with regard to what might be agreeable to him by way of a final settlement of the matter including his position to the effect that certain assets that the plaintiff has secured to her from her late father be used for the benefit and welfare of the children and their prospective educations.
The defendant represented that he made no claim against the plaintiff's present 401K. The defendant wishes to retain his present pension and wishes to retain the 1996 Ford Windstar motor vehicle.
The defendant represented that he is presently paying $75.00 weekly on the home equity loan and that there is one payment to go.
The defendant acknowledged certain obligations shown on his financial affidavit; to wit, to Charter Oak, Parental and Sears are his obligations.
The defendant indicated that he does not expect in the near term to earn anywhere near as much as what some of the Internal Revenue tax returns show as concerns past years. He hopes, however, to be able to continue in his regular field of endeavor.
The defendant professed an abiding love and affection for the children and noted that he provided a home for the plaintiff's mother for nine months when the plaintiff's parent was ill; that he had created a CT Page 3616 separate room for the plaintiff's mother.
The defendant represents that he suffers from flu-like symptoms; that he suffers from depression. He engages in certain exercise mindful of his condition to try to keep in shape. He has been with the union for 14 years. Prior to his last association with the union, he worked for Manafort Brothers for between four and five years.
One of the defendant's laments was that the plaintiff oftentimes leaves the children with her sister.
The defendant acknowledged the presence of the restraining order earlier adverted to.
The defendant may undertake to try and secure a tractor trailer driver's license if union work does not provide an alternative.
The defendant is presently residing with his brother in a one bedroom home. Apparently, the defendant's mother is also a member of that household.
The defendant denied verbally abusing the plaintiff and represented that contrary to her assertions that he had never physically abused her.
He represented that at one time the only object that he had ever thrown at the plaintiff was a peach.
The defendant had some laments with regard to the household abilities of the plaintiff and was concerned with regard to the plaintiff letting the oldest child Nicole visit the casino.
The plaintiff is presently on the first shift incident to her employment.
The plaintiff's testimony was to the effect that on occasions when the children were with the defendant, one or more of the children would call her and complain as to the defendant's conduct and his resort to immoderate use of alcohol.
Findings from the exhibits presented to the court:
Plaintiff's Exhibit A is a copy of the U.S. individual income tax return for 1999. From the W-2s attached thereto, the following information is set forth. As to the plaintiff, incident to her employment at Mashantucket Pequot; total wages for 1999, $23,913.00. CT Page 3617
From the W-2 for the defendant, from unemployment, an indication that the defendant had received $145.00 from the supplemental unemployment fund. Another W-2 for 1999 for the defendant from Manafort Brothers Inc., indicated wages for the defendant in the amount of $54,710.00.
The total income therefore shown on the 1999 federal income tax return for the plaintiff and the defendant amounted to $85,636.00 made up primarily of the foregoing information reflected on the W-2s.
From the year 2000 federal income tax return filed by the plaintiff and the defendant, and the W-2s attached thereto, the court notes as to the defendant, income from MYR Power Inc., of Pittsburgh, Pennsylvania, $34,279.15. As to the plaintiff Mashantucket Pequot Gaming, $22,659.23. Again, as to the defendant, supplemental unemployment fund, $435.00. Again as to the defendant, Manafort Brothers, Inc., wages, $23,427.87 and as to the defendant again from Allied Crane and Equipment Service, Inc., $11,135.90. The total of all wages earned by both parties on that federal income tax return amounted to $91,937.00. The foregoing being reflected upon Plaintiff's Exhibit B.
From Plaintiff's Exhibit C, the 2001 U.S. Federal income tax return for the plaintiff and the defendant as to the plaintiff, as to wages, Mashantucket Pequot Gaming, $19,596.93 and as to the plaintiff again, Hartford Life Insurance Co., $2,481.31. As to the defendant, MYR Power Inc., of Pittsburgh Pennsylvania, $85,546.96. Total wages for both the plaintiff and the defendant for that taxable year amounted to $107,625.00.
From Defendant's Exhibit 1, social security statement directed to the defendant, dated October 15, 2002, reflects thereon the defendant's earning record and as concerns the last four years; to wit, 1998, 1999, 2000 and 2001, the following are the defendant's taxed social security earnings. 1998, $51,037.00; 1999, $54,710.00; 2000, $68,842.00; 2001, $80,400.00.
Defendant's Exhibit 2 is a collection of statement of earnings and deductions directed to the defendant from MYR Power, which cover a variety of dates reflecting the defendant's weekly gross pay, items of withholding, federal withholding, FICA, Medicare, Connecticut withholding and dues. These numerous statements reflect substantial income on a weekly basis to the defendant while in the employ of MYR Power. These statement of earnings and deductions, 32 in number, cover, in the main, the year 2001 and reflect weekly gross earnings in different instances, sometimes as much as $2,545.00 a week and varying and sundry lesser CT Page 3618 amounts for the period covered by the statements.
From Defendant's Exhibit 3, W-2 for the year 2002, from an employer named Rhodes Connecticut, LLC, as concerns the defendant's wages and compensation reflected thereon, $8,870.52. A subsequent W-2 for the same employer reflected compensation to the defendant in the amount of $1,180.38 in that calendar year.
Defendant's Exhibit 4, Connecticut Department of Labor Benefit Payment History, reflecting the receipt by the defendant of $451.00 a week for the time frame set forth on the exhibit, which was dated January 22, 2003. The exhibit consists of three pages.
From Defendant's Exhibit 5, statement from NMP Golf Construction Corporation of Quebec, Canada as concerns the defendant indicating income during the period November 7, 2002 to the total amount of $996.25.
From the financial affidavits filed by the parties with the court, as to the plaintiff, her occupation as shown on the affidavit is that of a bank cashier at Foxwoods; gross weekly wage, $497.60; net wage after deductions for taxes, medical and dental, a 401K contribution in the amount of $39.81 a week and other modest deductions, net of $348.31. Weekly expenses claimed, $922.70. Debt; VISA and Mastercard, totaling $7,762.00. The plaintiff values the property at 8 Oak Hills Trail in Ledyard at $185,000.00 with a mortgage of $134,000.00 for an equity of $51,000.00; the 1997 Volvo automobile with a minus equity; money in the bank, checking, $290.00; other assets reflected on an attached schedule show assets of the plaintiff received by her from the estate of her late parent father now by virtue declines in the market valued at $35,000.00.
As to the defendant, presently unemployed, receiving $451.00 a week unemployment benefits; total weekly expenses, $428.00; debt from credit cards, primarily Charter Oak, Parental, Sears, Home Equity, totaling $18,088.00.
The defendant as a lay person values the property at 8 Oak Hill Trail in Ledyard at $225,000.00 with a mortgage of $120,000.00 where his one-half equity thereof is shown as $52,500.00. The defendant shows a 1996 Ford Windstar motor vehicle with an equity of $2,000.00. $200.00 in the bank and a union pension valued at $24,000.00.
Discussion
This is a marriage of approximately 17 years; the first marriage for both and the plaintiff and the defendant have three minor children. The CT Page 3619 children's ages are as follows:
Nicole is age 14; Michelle is age 11 and Kyle is age 9. According to the testimony, the children all appear to be in good health and are involved in scholastic endeavors in the local school system. The plaintiff and the defendant are both high school graduates. The plaintiff's health is fine; the defendant presently is experiencing some health problems.
Manifestly in the past, the defendant has been successful in fairly substantial earnings. He has now been receiving unemployment for a considerable period of time due in large measure to present health considerations primarily. Whether the defendant could have made a greater effort to reenter the labor market is a matter of conjecture and whether that is controlled in part by union regulations, in part, may well be the case.
A review of the employment record for both the plaintiff and defendant would indicate that both of the parties have worked and contributed to the economic welfare of the family during a major portion of the marriage.
While working on various projects in years past, it would appear that the defendant has put in long hours incident to his employment. The only instance of any violent conduct had to do with the cause for the issuance of the restraining order where the claim was made that the defendant threw water at the plaintiff while she was cleaning a floor and on one occasion where a peach was thrown at the plaintiff.
The only parties that testified during the proceedings were the plaintiff and the defendant. There were no outside witnesses who might have testified with regard to observed conduct of either of the parties and the plaintiff's claim as to the defendant's immoderate use of alcohol. There is no indication of any resort to controlled substances or drugs.
The defendant's claim is to the effect that the plaintiff wants more in the way of an active outside social life and friendships than she has developed incident thereto.
The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statute § 46b-40 and subsequent sections of the statute including without CT Page 3620 limitation §§ 46b-66a, 46b-81, 46b-82, 46b-83 and 46b-84. The court has considered all of the applicable case law that governs the matter. The court has considered the testimony of the parties, their candor or lack thereof as observed during the conduct of the proceedings and the arguments made by counsel. The court has considered the financial affidavits and those exhibits submitted to the court. The court has considered the length of the marriage, the apparent cause of the breakdown and dissolution, the age, health, station, occupation and employability or prospects thereof of each of the parties and the estate and needs of the parties. The court has considered the standards of living of the parties. The court has considered the present financial position of the parties and their prospect, if any, for future income and opportunities. The court has considered the issue of fault.
The court enters the following orders.
Mindful of the findings made by the court as concerns the testimony presented, as to the issue of custody of the three minor children, Nicole, Michelle and Kyle, custody of the three minor children shall be joint with the plaintiff mother being the primary custodial and residential parent. The defendant shall have reasonable and liberal rights of visitation with the children. The court acknowledges that the plaintiff requested sole custody of the three minor children, but the evidence presented to the court does not appear to be of such weight and consequence as to justify that request and in the vein of hoping to have a reasonable and happy relationship between both parents, joint custody will presumably advance that interest best.
On the basis of the testimony, exhibits and the guideline worksheet submitted by counsel for the defendant, and mindful of the defendant's present financial circumstances as spelled out in the memorandum, and mindful of the prior order of Robaina, J., the state of the defendant's health and like matters, support for the three minor children at this juncture, based upon the defendant's present circumstances and being mindful of his earnings in the past and the hope in the near term to be reemployed by the union as an operating engineer, and without prejudice, shall be in the amount of $280.25 a week. The court directs that the defendant at such time as he becomes reemployed with his position as an operating engineer that notice thereof be given to the plaintiff in order that a modification of the order of support may be considered.
The plaintiff shall continue the present in-place insurance coverage for medical and allied purposes that she has with her employment at the casino for the welfare and betterment of the children and at such time as the defendant is reemployed in his usual calling that issue may be CT Page 3621 readdressed as necessary. Anything uncovered, medical, dental and allied health considerations, shall be apportioned equally between the parties. On the basis of the papers presented to the court, only the face sheet of the guideline worksheets were presented and the percentages which would have appeared on the reverse sides, were not available to the court.
As to the issue of alimony, the court orders and directs that the defendant shall pay to the plaintiff the sum of $1.00 a year for the term of five years; the amount may be modifiable but not the term. The alimony order to terminate earlier upon the death of either of the parties, the plaintiff's remarriage or cohabitation as provided under the provisions of the statute.
As to the issue of an arrearage, by virtue of prior orders of the court, Robaina, J., and the agreed stipulation by counsel for the parties at the time of trial, the court finds the same to be in the amount of $11,975.00. As to the issue of the arrearage, mindful of the present state of circumstances of the defendant, the arrearage shall be paid and discharged within three years from the date hereof; however, in the event of the defendant's return to a position as an operating engineer with the union, notice thereof is to be given to the plaintiff in order that this issue may be readdressed.
As to the home and real estate jointly owned by the parties situated at 8 Oak Hills Trail in the town of Ledyard, the defendant shall convey and set over to the plaintiff by a good and sufficient deed all of his right, title and interest to said property and the plaintiff shall assume and be responsible for and pay and discharge any and all mortgages or encumbrances presently of record on said property and hold the defendant harmless therefrom.
At the time of the conveyance from the defendant to the plaintiff, the plaintiff shall give and execute in favor of the defendant a mortgage in the amount of $8,000.00, interest waived, to be paid and discharged on the occasion of the property being sold or conveyed or being refinanced or on the plaintiff and the minor children vacating the residence as their home or in any event on the expiration of eight years from this date.
Each of the parties may keep and retain their present pensions; the defendant's being a union pension valued at $24,000.00 as shown on his financial affidavit. As to the plaintiff, she may retain the pension which she has in place, which the testimony indicated was to the amount of $20,000.00. The same was not set forth on her financial affidavit. CT Page 3622
The plaintiff may retain all of the assets shown on the separate schedule attached to her financial affidavit dated February 28, 2003, which reflect the funds left or willed to her by her late parent father. The same according to the schedule as of February 28, 2003, amounting to approximately $35,000.00.
The plaintiff may have the 1997 Volvo automobile which has a minus equity and be responsible for the payments thereon.
The plaintiff may have and retain the modest amounts in the Liberty Bank savings and checking accounts.
The defendant may have the 1996 Ford Windstar automobile and be responsible for any debt or obligation incident thereto.
The defendant may have and retain the $200.00 shown in his Charter Oak savings account.
There is no cash value attributed to insurance as reflected upon his financial affidavit.
As concerns the issue of exemptions for tax purposes for the minor children, the plaintiff shall be entitled to claim two of the children as dependency exemptions on her income tax return in even-numbered years and one of the children as a dependency exemption in odd-numbered years. The opposite shall occur in odd-numbered years with the defendant being entitled to take two of the children and the plaintiff, one.
As to the debts shown on the respective financial affidavits, the plaintiff shall be responsible for the Visa debt of $4,762.00 and the Mastercard debt of $3,000.00.
The defendant shall be responsible for the Sears Mastercard debt of $10,000.00. The small balance shown on the defendant's affidavit in the amount of $288.00 shall be the obligation of the plaintiff; mindful of the court's order as to the real estate.
The court feels that it cannot cancel out the accrued arrearage in transferring the defendant's equity interest in the real estate as suggested by counsel. To follow that, counsel would undo a prior order by Robaina, J.
The failure of the plaintiff to disclose her pension asset on the financial affidavit was, if not intentional, negligent. CT Page 3623
It would have been helpful to the court if an independent witness had offered testimony on the defendant's claimed immoderate consumption of spirits.
The current order of support is based on the defendant's guideline support worksheet and his present lack of employment status.
As noted, when he regains employment, notice is to be given to the plaintiff promptly.
The defendant shall have 60 days to peacefully remove his personal effects from the residence.
The defendant is to give notice to the plaintiff when he receives his hydraulic operator's license.
The court retains jurisdiction of this matter for purposes of the entry of educational support orders for children issue of this marriage pursuant to Public Act 02-128.
Each party shall be responsible for their own attorneys fees and costs.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, J. CT Page 3624